Judge Undeuwood
delivered the opinion of the Court.
Judsre Nicholas did w t sit in this ease.
Eli Cleveland conveyed by bill of sale to Levi Hart, a number of slaves. The wife of Cleveland united in the conveyance for the purpose of barring the rights of her heirs, who it was apprehended, would be entitled to the slaves after her death. There was a reservation of a life estate to Cleveland and wife, upon the face of the bill of sale. It seems that Cleveland had sold and delivered sundry slaves to others, before the execution of the bill of sale to Hart, and that he included the slaves so sold in the bill of sale to Halt.
Shortly after the execution of the bill of sale, Hart endorsed upon it, at the instance of Cleveland, a release to the following effect, and which was admitted to record, the bill of sale having been recorded: to-wit: “This certificate of release, witnesseth, that whereas the within Eli Cleveland, hath heretofore sold and legally conveyed away many of the negro slaves therein specified as conveyed by him and his wife, to me hv deed of indenture, bearing date the J5th day of November, 1819. Now, I do hereby agree for mvself, mv executors, administrators or ■assigns, to release and forever quit all claims derived to me by the aforesaid and within conveyance, and do now release and forever quit claim against the said Eli, his heirs, executors, administrators or assigns, for all such negroes in the within deed specified, or their values as have before the date thereof, been so sold and legally conveved hv said Cleveland to any person whatever. Witness &c.”
On the trial of the cause in the circuit court, it seems to have been entirely overlooked, that the re*^ease '’Y Hart was susceptible of a construction which would embrace the slave's that were possessed by Cleveland, as well as those which he had previously so^* hereby agree for myself, fyc. to release, and forever quit all claims derived to me by the aforesaid and icilhin conveyance,” is very comprehensive language. *339 and embraces all the slaves mentioned in the bill of sale, whether they were in the possession of Cleveland, or whether they liad been sold. If the release stopped with this sentence, there could be no doubt, that liart had agreed to give up all claim whatever to all the slaves, and that it was his duty to execute a formal release, presently. Is this construction limited and restricted by any tiling apparent on the of the release? We think it is not-. The following clause, beginning with the words “and do now release” &c. proves that Hart made an immediate surrender of Jus title derived under the bill of sale to the slaves which Cleveland had theretofore sold. This does not restrict the meaning of the language going before. It merely executes the contract so far as the slaves which Cleveland had sold were concerned, and leaves the contract in relation to the slaves which Cleveland had in possession as executory, thereafter to be perfected by the execution of a release. Unless this construction prevails, the first clause is without meaning and should not have been inserted. We cannot say that it was inserted through mistake by Hart, and that he did not foresee the effect it might have, and consequently, that it should lie disregarded.
plaintiff in detinue estopfro“reexecutory agreement to rel«ase the foT.^Exec”tory contract may vest such thing^contracted for, as will maintain ¿etinué°n of
It does not appear that Hart has ever executed a release for the slaves which Cleveland retained in his possession, and it may be urged, (hat if the tract remains executory, lie ought still to recover, Not so. A contract not fully executed, may vest such a right to the chattel contracted for, as will maintain the action of detinue. McDowell vs. Hall, II Bibb, 610. Here Hart agrees to release all claims derived to him under the conveyance. It is an acknowledgment that he has no right, and that the right, is with Cleveland. As slaves pass as chattels, and as Cleveland retained the possession, we think Hart should not have been permitted to recover, when he had agreed to release all claims, merely because he had not performed his agreement, on the institution of liis suit.
The chancellor might refuse to compel a specific performance of the agreement, because it related to a chattel. An action at law, might be unproductive. *340 The doctrine, therefore, that an executory contract for a chattel, confers the right to the thing, ought to prevail at law, as a good defence to an action of detinue brought lor the recovery of the thing.
Wickliffe and Woolley, for appellant; Chinn for appellee.
The instructions given by the court', were inconsistent with the foregoing view of the case. Vt e deem it unnecessary to notice them particularly, or any other point made before this court.
The judgment of the circuit court is reversed, with costs, and the cause remanded for a new trial,, and for proceedings not inconsistent herewith.